UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **Roger Wright,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No.: 1:06-CV- 647-WKW |
| | ) |
| **Pemco World Air Services, Inc.** | ) |
| | ) |
|     **Defendant.** | ) |

### DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Plaintiff Roger Wright's ("Plaintiff") Response Brief fails to adequately address (and, in some cases, even ignores) the core issues raised in Defendant Pemco World Air Services, Inc.'s ("Pemco" or "Defendant") motion for summary judgment and supporting brief. Throughout his response Plaintiff ignores the dynamic context in which Pemco's decisions were made in July 2005. Plaintiff's subjective criticism of Pemco's actions ultimately seeks to supersede the legitimate business decisions made during an undisputed crisis. Because Plaintiff cannot supplant Johnson's reasonable decisions with his own, Plaintiff has not and cannot create a genuine issue of material fact with regard to his remaining claims and Pemco is entitled to summary judgment as a matter of law.[1]

### RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

Plaintiff's "Statement of Facts" includes inaccuracies and unsupported legal assertions and ignores key evidence in the record. At a minimum, the following "factual" allegations in Plaintiff's response should be rejected by the Court:

---

[1] Plaintiff expressly concedes that summary judgment is due to be granted as to Counts IV and V of his Complaint – the ADA and ERISA claims. As a result, Pemco's motion is unopposed and Counts IV and V are due to be dismissed.

1. "The plan for reorganization of the Facilities Department prior to Plaintiff leaving for medical leave was that the Director of Facilities position would be eliminated, leaving Wright and Miller in place." (Response at 5, ¶ 5).

This statement, even if taken as true for the purposes of summary judgment only, has no application to the facts and circumstances of July 2005. While Pemco adamantly disputes Henry Ward's story of the sacrifice he made to guarantee Plaintiff's future employment as Manager of Facilities (and Plaintiff's "knowledge" is admittedly limited to Ward's hearsay (Pl. Depo. at 71:5-72:15)),[2] even if Pemco had agreed in May or June 2005 to keep Plaintiff in the Manager of Facilities position, business conditions obviously worsened over the following weeks and necessitated change to any preexisting plan. Plaintiff's suggestion that he had some unwritten employment contract or guarantee is inaccurate.

2. "In planning for the leave, Wright spoke with Johnson prior to the surgery about staffing his position and Johnson agreed to move Miller, the evening shift facilities supervisor, to temporarily cover for Wright. (Ex. A, Wright dep. at 76:3-15)." (Response at 6, ¶ 8).

Plaintiff misconstrues his own testimony through his description of Johnson's "agreement" to replace Plaintiff with Richard Miller. The deposition testimony cited by Plaintiff does not provide that Johnson made any kind of agreement with Plaintiff as to who would cover for him, and Johnson did not testify that he had entered into any such agreement.

3. "Briody never worked in facilities before and had not worked in Facilities at Pemco before moving into Wright's position in June 2005. (Ex. F, Briody dep. at 19:21-20:1." (Response at 7, ¶ 10).

While it is undisputed that Briody had not worked in Pemco's Facilities Department prior to June 2005, he clearly testified that he had worked in similar settings and had prior dealings in "similar skill sets" and was well-familiar with the Facilities Department from his personal

---

[2] Under Fed. R. Civ. P. 56 and the cases in this Circuit which interpret this rule, a party opposing summary judgment may not rely on hearsay or other evidence which is inadmissible. *Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 362 F.3d 775, 783 (11th Cir. 2004)("Inadmissible hearsay generally cannot be considered on a motion for summary judgment."); *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999).

experience of supervising the facilities employees while he was the Night Manager. (Briody Dep. at 54:2-12). Any suggestion that Briody was unqualified to cover the facilities work is unfounded.

    4.    "Once Briody moved to facilities he was considered the Head of the Facilities Department. (Ex. F, Briody dep. at 66:17-67:3)." (Response at 7, ¶ 10).

Plaintiff's paraphrasing of Briody's testimony is not entirely accurate – the only person who assumed Briody was head of the department was Briody himself as he assumed those duties and responsibilities. It is undisputed that Johnson was responsible for the Facilities Department once Henry Ward retired. Moreover, both Briody and Johnson made clear that Briody did not officially take the Manager of Facilities position until after the lockout ended. (Briody Depo. at 75:8-76:3; Johnson Depo. at 175:14-176:13).

    5.    "When Briody moved to Facilities, Pemco hired another employee to fill Briody's position as the Night Manager. (Ex. F, Briody dep. at 52:3-11). (Response at 7, ¶ 10).

Plaintiff's paraphrasing of this limited portion of Briody's testimony is misleading. While is it true that Pemco eventually hired a replacement for the Night Manager job, Plaintiff neglects to cite to the remaining part of Briody's answer, which clearly states he did not know when his replacement was hired, and it could have occurred during or after the lockout. (Briody Depo. at 52:12-25). The citation provided by Plaintiff actually states that when Briody assumed the facilities duties two production supervisors alternated covering for Briody while he was covering for Plaintiff. (Briody Depo. at 52:3-7).

    6.    "[Briody's] deposition testimony established him as the Head of the Facilities Department at this time. (Ex. F, Briody dep. at 64:23-65:2). (Response at 8, ¶ 13).

In addition to the inaccuracy of this statement (as explained above), the deposition citation provided does not support Plaintiff's statement as it makes no reference to him being

3

Head of the Department and should not be relied on as evidence for that "fact." The cited testimony actually states:

> Q. And you were given tasks to perform in facilities, as I understand your testimony, you were working basically full time in facilities during this period?
>
> A. That's correct.

(Briody Depo. at 64:23-65:2).

    7.     "Since there is nothing in the letter about *not* wishing to be reinstated, a more accurate inference from this fact is that Johnson decided not to reinstate the plaintiff after being notified by counsel of the FMLA and ADEA violations." (Response at 10, ¶ 16).

This "statement of fact" is actually argument and also inaccurate. This argument is not merely unsupported by the record – it is directly contradicted by the record. All of the evidence in the record is clear that Plaintiff had no intention to return to work at Pemco after being laid off (particularly as long as Dennis Johnson was there). Plaintiff made no attempt to contact anyone at Pemco about returning to work, including the day Plaintiff returned to Pemco to collect his personal belongings. Plaintiff did not call, write, or even visit a single Pemco employee to ask about coming back to work before, during, or after the lockout. Instead, Plaintiff immediately applied for and began drawing on his retirement benefits despite being made aware that he would be penalized for doing so. Plaintiff made quite clear from his actions and through his attorney that he had no interest in returning to work but only wanted more severance money for what he perceived to be years of dutiful service. Plaintiff's description of Pemco's reasonable interpretation of the unambiguous severance demand letter as being clear evidence of retaliation is a red herring and should not be used as a basis to deny summary judgment.

# **LEGAL ARGUMENT**

I. **PLAINTIFF'S REINSTATEMENT RIGHTS UNDER THE FMLA CEASED WHEN HIS EMPLOYMENT RELATIONSHIP WAS LEGITIMATELY TERMINATED DURING A REDUCTION IN FORCE.**

Pemco agrees with Plaintiff's contention that the central issue of this case (with regard to Plaintiff's FMLA claims) concerns Plaintiff's reinstatement rights under the FMLA. However, Plaintiff's hindsight ignores what was happening at Pemco in July 2005. In support of his position, Plaintiff alleges that his former position was never eliminated and that Johnson's stated efforts to retain only those employees who were certified to work on aircraft is pretext for retaliation (and age discrimination). Neither allegation protects Plaintiff's claim(s) from summary judgment.

As stated in Pemco's initial brief, even if Plaintiff was denied a benefit to which he was entitled, Plaintiff would have been laid off in July 2005 irrespective of any FMLA qualifying leave. Although Plaintiff was not reinstated to his Manager of Facilities job because the position had been eliminated (indeed, so had the department) while the duties and responsibilities of that former position were assumed by Clarke Briody. Importantly, Pemco does not dispute that there was facilities work to be done. Pemco has never taken the position that Plaintiff was laid off due to a lack of facilities work. The questions were whether it was necessary to be done, and if so, who could cover that work in addition to being able to handle aircraft work if necessary. In July 2005, there was no longer a clear delineation among departments as there had been in the past. As stated by Johnson, Pemco "did not have a [F]acilities [D]epartment after Roger did not return. We continued doing facility-type work, be we did not have a [F]acilities [D]epartment." (Johnson Depo. at 164:21-24; 175:1-4). Plaintiff now disputes that his job was eliminated (because Briody continued to perform facilities work) and seeks to create an issue of fact on this point. While Pemco maintains that the position was eliminated, even if it had not been (as

Plaintiff repeatedly contends), that position was effectively eliminated for Plaintiff because he was not qualified to work on aircraft. Plaintiff obviously concedes that he was not certified to work on aircraft (or he would have stated otherwise) but instead alleges that Johnson's stated standard was not actually used because Briody did not perform production work.

      Despite Plaintiff's suggestion to the contrary, the fact that Briody did not regularly work on aircraft after assuming the duties and responsibilities of the Manager of Facilities position is not proof that Johnson did not use such a standard. By July 15, 2005, Johnson could not know if and when there would be a strike or a lockout or how long those events may last. Instead, he had to prepare for the worst and make further reductions in the workforce, leaving only the most versatile employees who were qualified to work several jobs, including working on aircraft. Obviously, production work was decreasing at the time but that was subject to change on short notice. The fact that Briody did not perform production work during the weeks that followed but spent his time performing facilities work in the wage of employee sabotage does not dilute the importance Johnson placed on retaining employees who could work on aircraft if necessary. If the choice came down between two employees – one who was qualified to work on aircraft and one who was not – Johnson chose the former. Plaintiff's suggestion that the FMLA would be subverted if Johnson were allowed to make such a distinction obviously ignores 29 CFR §§ 825.216 and 825.312, which allow an employer to deny an employee's restoration to employment once the employer shows that the employee would not otherwise have been employed if leave had not been taken, including in the context of a reduction in force. Pemco has made such a showing and in doing so has complied with the FMLA.

      Additionally, the fact that facilities work still needed to be done was not a factor in Johnson's decision-making as to who survived the reduction in force. Pemco generates income on production work – not facilities work, which is purely overhead. Plaintiff cannot legitimately

6

dispute that what reasonably mattered to management during unpredictable and declining business conditions was to have the minimum number of aircraft-qualified people on staff to keep the business afloat. Of course, hindsight is always better, and had Johnson been able to foresee the future in July 2005, all of this may have been avoided. However, Johnson's decisions were not made in a vacuum and did not have the benefit of hindsight. Plaintiff cannot criticize Johnson at this point for a decision made during a crisis that impacted many more people than just Plaintiff (over 165 others to be more precise). Plaintiff's efforts to minimize the context in which the decisions were made are not surprising and even understandable, but they are not supported by the law.

As set forth in Pemco's initial brief, the Eleventh Circuit has consistently held that an employer's business decisions are entitled to deference. *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1254 (11th Cir. 2000). While there may not have been a set mathematical formula for the layoffs, Johnson's decisions under ever increasing pressure were neither discriminatory nor retaliatory but instead focused on laying off all but the minimum number of aircraft-qualified employees to do whatever work there was to do for an unknown period of time. (Johnson Depo. at 159:2-15). This standard was applied uniformly to all employees (except a limited number of support staff) regardless of prior or current leave taken (or age). No reasonable juror could find that Plaintiff's inclusion in the layoffs had anything to do with his back surgery and recovery (or age). The temporal proximity of Plaintiff's leave and Pemco's rapidly declining business situation is merely an unfortunate coincidence. As circumstances changed almost daily, Pemco and its leadership did what it thought reasonably necessary at the time. By steadfastly ignoring the context of Johnson's decisions, Plaintiff clearly seeks to replace Johnson's judgment with his own. In doing so, he has failed to "present 'significant probative' evidence on the issue to avoid

summary judgment." *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997); *Mayfield v. Patterson Pump Co.*, 101 F. 3d 1371, 1375 (11th Cir. 1996).

## II.    PLAINTIFF FAILS TO ESTABLISH A VIABLE OUTRAGE CLAIM.

With regard to the outrage claim, Plaintiff's brief fails to present any new or meaningful analysis that was not principally addressed by Pemco in its initial brief. Even if everything Plaintiff alleges is true (which Pemco disputes), Plaintiff's response misses the mark and this claim is ripe for summary judgment.[3] Plaintiff's threshold to survive summary judgment on this claim is high. Plaintiff must satisfy an objective standard, which he simply fails to do. *Harrell v. Reynolds Metals Co.*, 495 So.2d 1381, 1387 (Ala. 1986). From the objective vantage of a civilized society, the facts as described by Plaintiff are simply not egregious enough to constitute an outrage claim, particularly when considered in the context of Pemco's dire business situation in July 2005.[4] The fact that Plaintiff, an at-will employee, was ultimately laid off because he was not qualified to work on aircraft does not go beyond all bounds of decency or is not utterly intolerable. See *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp.2d 1314, 1319 (N.D. Ala. 2002)(finding that allegations of pregnancy discrimination with regard to overtime hours, scrutiny and termination over a period of eight days are "not sufficiently egregious, as a matter of law, to support a cause of action for outrage under Alabama law").

Plaintiff ultimately contends that his case should go to a jury because "[r]ecklessly engaging in unlawful conduct against a vulnerable person is intentional infliction of emotional distress," citing no law to support this contention. (Response Brief at 24). Merely stating that his claim should be tried by a jury is not enough to satisfy Plaintiff's burden. *Bell v. Eufaula*

---

[3] Whether conduct rises to the level sufficient to support a claim of outrage "may be made by the trial court as a matter of law." *Logan v. Sears, Roebuck & Co.*, 466 So.2d 121, 123 (Ala. 1985).

[4] In his response, Plaintiff contends that Pemco has misstated the law concerning an outrage claim by declaring there are only three factual scenarios available to a plaintiff alleging an outrage claim. (Response Brief at 23). Pemco disputes this as Pemco's brief merely emphasizes the exceedingly narrow scope of the tort by virtue of the fact that

8

*City Bd. of Educ.*, 995 F. Supp. 1377, 1387 (M.D. Ala. 1998). It is even clearer now that Plaintiff has wholly failed to establish by substantial evidence that Pemco intentionally inflicted emotional distress upon Plaintiff. As set forth in Pemco's initial brief and herein, Plaintiff's claim simply fails to rise to the level of an actionable outrage claim and is due to be dismissed.

### III.     PLAINTIFF FAILS TO ESTABLISH DIRECT EVIDENCE OF AGE DISCRIMINATION.

With regard to the Plaintiff's age discrimination claim, the only argument offered in Plaintiff's response that has not been principally addressed by Pemco above or in its initial brief is Plaintiff's alleged direct evidence of age prejudice on the part of Johnson. In his argument on his age claim, Plaintiff relies almost exclusively on the Affidavit of Jim Battcher, Pemco's former Human Resources Director who was fired for cause (by Ray Bennett) and unsuccessfully pursued his own age discrimination claim with the EEOC.

Initially, the statements as alleged by Plaintiff (here, through Battcher) do not rise to the level of direct evidence with regard to Plaintiff's claims. The Eleventh Circuit narrowly defines direct evidence, and only the most blatant remarks whose intent could be nothing other than to discriminate constitute direct evidence. *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989); *see also Williams v. Tyco Elec. Co.*, 2006 U.S. App. LEXIS 77 *15-17 (6th Cir. 2006)(holding that a supervisor's email referencing age and his clear admission at his deposition that he felt it would be better to let the older, good performers go because they would be retiring soon anyway did not constitute direct evidence of age discrimination).[5] Even if they did somehow constitute direct evidence, the same employment decisions would have been made regardless of any discriminatory intent.

---

the Alabama Supreme Court has only sustained an outrage claim in extremely limited circumstances. *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993).

[5] The Supreme Court has held that consideration of a job candidate's retirement is permissible and does not constitute unlawful age discrimination unless accompanied by a reliance upon inaccurate and denigrating age-based stereotypes. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611-13 (1993).

More importantly, neither Battcher nor Plaintiff discuss the age of the decision-maker, Johnson – 50, or Plaintiff's presumed comparators, Ted Ball – 65 and Richard Miller – 58. Plaintiff's silence is instructive. Instead, Plaintiff focuses on Battcher's ageist allegations, which are entirely circumstantial as they have nothing to do with Johnson's decisions about Plaintiff. In fact, Battcher's only evidence related specifically to Plaintiff is that he reviewed Plaintiff's file and determined that there was nothing in Plaintiff's file that would justify termination based on work performance and told Johnson. (Paragraph 5 of Battcher Affidavit). Of course, Johnson clearly testified that Plaintiff's work performance had no part in his decision to lay off Plaintiff. The remainder of Battcher's allegations regarding age all relate to Johnson's alleged comments about older workers or an aging workforce in general or discussions surrounding retirement, none of which are at issue in Plaintiff's case. As such, they do not constitute direct evidence with regard to Plaintiff and should not be regarded as such.

## CONCLUSION

Plaintiff's Response Brief fails to create a genuine issue of material fact with regard to his remaining claims and Pemco is entitled to summary judgment as a matter of law.

Respectfully submitted,

 s/ John B. Holmes, III
JEFFREY A. LEE
JOHN B. HOLMES, III
Attorneys for Defendant

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama  35203-2618
Telephone:   205.254.1000
Facsimile:   205.254.1999
Emails:       jlee@maynardcooper.com
                   jholmes@maynardcooper.com

10

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 5, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Elizabeth B. Glasgow
Farmer, Price, Hornsby & Weatherford, L.L.P.
100 Adris Place (36303)
Post Office Drawer 2228
Dothan, Alabama  36302

                        *s/ John B. Holmes, III*
                        OF COUNSEL